1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 756-6994
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHRISITINA CHASE, on behalf of
herself and all others similarly situated,

                                    Plaintiff,

v.

HOBBY LOBBY STORES, INC., an
Oklahoma corporation, and DOES 1
through 50, inclusive,

                                    Defendant.

Case No.:  **'17CV0881 GPC BLM**

**CLASS ACTION COMPLAINT**
  1. **Violation of California's Unfair
     Competition Laws ("UCL");
     California Business &
     Professions Code Sections 17200,**
     *et seq.***;**

  2. **Violation of California's False
     Advertising Laws ("FAL");
     California Business &
     Professions Code Sections 17500,**
     *et seq.***;**

  3. **Violations of California
     Consumer Legal Remedies Act
     ("CLRA"); California Civil
     Code Sections 1750,** *et seq.*

**[DEMAND FOR JURY TRIAL]**

1

Plaintiff CHRISTINA CHASE brings this action on behalf of herself and all others similarly situated against Defendant HOBBY LOBBY STORES, INC. ("Hobby Lobby"), and states:

## I.    NATURE OF ACTION

1.    "If everyone is getting a deal, is anyone really getting a deal?"[1]  This class action targets Hobby Lobby's unlawful, unfair, and fraudulent business practice of advertising fictitious prices and corresponding phantom discounts on their Hobby Lobby branded and/or trademarked lines of merchandise.  This practice of false reference pricing occurs where a retailer fabricates a fake regular, original, and/or former reference price, and then offers an item for sale at a deep "discounted" price.  The result is a sham price disparity that misleads consumers into believing they are receiving a good deal and induces them into making a purchase.  Retailers drastically benefit from employing a false reference-pricing scheme and experience increased sales.

2.    The California legislature prohibits this misleading practice. The law recognizes the reality that consumers often purchase merchandise marketed as being "on sale" purely because the proffered discount seemed too good to pass up.  Accordingly, retailers have an incentive to lie to customers and advertise false sales.  The resulting harm is tangible—the bargain hunter's expectations about the product she purchased is that it has a higher perceived value and she may not have purchased the product but for the false savings.

3.    Hobby Lobby utilizes a false and misleading reference price in the marketing and selling of Hobby Lobby branded and/or trademarked merchandise at its retail stores. Hobby Lobby advertises its merchandise for sale by attaching a price tag on the item that

---

[1] David Streitfeld, *It's Discounted, but is it a Deal? How List Prices Lost Their Meaning*, New York Times, https://www.nytimes.com/2016/03/06/technology/its-discounted-but-is-it-a-deal-how-list-prices-lost-their-meaning.html, (March 6, 2016), last accessed April 28, 2017.

sets forth a fictitious "Marked" price. *See e.g.* Exhibit A. The "Marked" price is then substantially discounted from a "__% OFF" price depicted on corresponding price placards adjacent to the respective items. *See e.g.* Exhibit B. The "__% OFF" price represents the percentage of the savings the customer is purportedly saving off the "Marked" reference price by purchasing the product.

4.    However, the "Marked" price is a total fiction. The only stores in which the Hobby Lobby branded and/or trademarked merchandise is actually sold is at the Hobby Lobby retail stores. Thus, the only market price for the Hobby Lobby branded and/or trademarked merchandise is the price at which the merchandise is sold in the Hobby Lobby retail stores, since Hobby Lobby is the only "market" for Hobby Lobby branded and/or trademarked merchandise.

5.    The Hobby Lobby branded and/or trademarked merchandise is never offered for sale, nor actually sold, at the represented "Marked" price. Thus, the "Marked" price is false and is used exclusively to induce consumers into believing that the merchandise was once sold at the "Marked" price and from which the false and discount and corresponding "__% OFF" price is derived. Hobby Lobby's deceptive pricing scheme has the effect of tricking consumers into believing they are receiving a significant deal by purchasing merchandise at a steep discount, when in reality, consumers are paying for merchandise at its regular or original retail price.

6.    The advertised discounts are fictitious because the regular or original reference price, or "Marked" price, do not represent a *bona fide* price at which Hobby Lobby previously sold a substantial quantity of the merchandise for a reasonable period of time as required by the Federal Trade Commission ("FTC"). In addition, the represented "Marked" price was not the prevailing market retail price within the three months immediately preceding the publication of the advertised former "Market" price, as required by California law.

7.    Through its false and misleading marketing, advertising, and pricing scheme, Hobby Lobby violated and continues to violate, California and federal law prohibiting

advertising goods for sale as discounted from former prices that are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Hobby Lobby violated and continues to violate: California's Unfair Competition Law, Business and Professions Code §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, Business and Professions Code §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, Civil Code §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

8.    Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased one or more Hobby Lobby branded and/or trademarked merchandise at Defendant's Hobby Lobby retail stores that were deceptively represented as discounted from false former "Marked" prices. Plaintiff seeks to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in consumer's minds, and to obtain redress for those who have purchased merchandise tainted by this deceptive pricing scheme. Plaintiff also seeks to enjoin Hobby Lobby from using false and misleading misrepresentations regarding retail price comparisons in their labeling and advertising permanently. Further, Plaintiff seeks to obtain damages, restitution, and other appropriate relief in the amount by which Hobby Lobby was unjustly enriched as a result of its sales of merchandise offered at a false discount.

9.    Finally, Plaintiff seeks reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## II.    JURISDICTION AND VENUE

10.    This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interests and

costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class have a different citizenship from Hobby Lobby.

11.    The Southern District of California has personal jurisdiction over the defendant named in this action because Hobby Lobby is a corporation or other business entity authorized to conduct and does conduct business in the State of California. Hobby Lobby is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the ownership and operation of over 50 retail stores within the State of California and over 750 retail stores nationwide.

12.    Venue is proper under 28 U.S.C. § 1391(b)(2) because Hobby Lobby transacts substantial business in this District. A substantial part of the events giving rise to Plaintiff's claims arose here.

**III.    PARTIES**

      <u>Plaintiff</u>

13.    Christina Chase resides in San Diego, California. Ms. Chase, in reliance on Hobby Lobby's false and deceptive advertising, marketing, and "discount" pricing schemes, purchased a 5" x 7" Green Tree Gallery Shadow Box Display Case Photo Frame for approximately $8.99 on or around March 1, 2017 at a Hobby Lobby retail store located at 8810 Grossmont Boulevard, La Mesa, California 91942. She also purchased a Master's Touch Fine Art Studio Oil, Acrylic & Watercolor Chisel Blender for approximately $2.34 that same day. Ms. Chase went to the Hobby Lobby store to look for a picture frame for her home and for art supplies.

14.    Ms. Chase first walked down an aisle lined with photo frames and selected a black wooden 5" x 7" Green Tree Gallery Shadow Box Display Case Photo Frame (the "picture frame"). The back of the picture frame had a white price tag sticker with black print, approximately 2" x 1 1/2" in size (attached hereto as Exhibit A). The price tag on the picture frame listed the "Marked" price as "$17.99." Among the other picture frames, and prominently displayed upon a shelf in the picture frame aisle, was a white placard with

red and black print, approximately 8" x 11" in size. The placard advertised "Photo Frames 50% OFF the Marked price" in bold print (attached hereto as Exhibit B).

15.     After examining the price tag, in particular the "Marked" price as $17.99, Ms. Chase believed the picture frame had previously been sold for $17.99 at Hobby Lobby. When she examined the representation on the placard, displaying the discounted sale percentage of "50% OFF the Marked price," or $8.99, Ms. Chase reasonably believed she was purchasing a picture frame that had a value significantly higher than the $8.99 purchase price. In short, Ms. Chase believed she was getting a good deal.

16.     However, this product was never offered for sale or sold at the $17.99 price, nor was it offered for sale or sold at that price within the 90-day period immediately preceding Ms. Chase's purchase. Therefore, Ms. Chase was damaged by her purchase of the picture frame.

17.     Next, Ms. Chase walked to the art supplies section of the store and selected a Master's Touch Fine Art Studio Oil, Acrylic & Watercolor, Golden Taklon Chisel Blender, Series 7050 Size 4 (the "paintbrush"). The back of the paintbrush had a white price tag sticker with black print, approximately 2" x 1 1/2" in size. The price tag on the paintbrush listed the "Marked" price as "$4.69" (attached hereto as Exhibit C). Among the other art supply items, and prominently displayed upon a shelf in the art supply aisle, was a white placard with red and black print, approximately 8" x 11" in size. The placard advertised "Art Supplies 50% OFF the Marked price" in bold print.

18.     After examining the price tag, in particular the "Marked" price as $4.69, Ms. Chase believed the paintbrush had previously been sold for $4.69 at Hobby Lobby. When she examined the representation on the placard, displaying the discounted sale percentage of "50% OFF the Marked price," or $2.34, Ms. Chase reasonably believed she was purchasing a paintbrush that had a value significantly higher than the $2.34 purchase price. In short, Ms. Chase believed she was getting a good deal.

19.     However, this product was also never offered for sale or sold at the $4.69 price, nor was it offered for sale or sold at that price within the 90-day period immediately

preceding Ms. Chase's purchase.  Therefore, Ms. Chase was damaged by her purchase of the paintbrush.

### Defendant

20.    Plaintiff is informed and believes, and upon such information and belief alleges, Defendant Hobby Lobby Stores, Inc. is a privately held, Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.  Defendant operates Hobby Lobby retail stores and the hobbylobby.com website, and advertises, markets, and distributes, and/or sells home décor, arts, crafts, hobby supplies, and other accessories in California and throughout the United States.

21.    Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1-50 inclusive, and therefore sues such Defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members, as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## IV.    FACTUAL BACKGROUND

### The Fraudulent Sale Discounting Scheme

22.    Hobby Lobby is the largest privately owned arts-and-crafts retailer in the world, operating approximately 750 stores in the United States and over 50 stores in California, and earning approximately $4 billion in revenue in 2015.  Hobby Lobby sells merchandise including home décor, picture framing, decorative accessories, woodcrafts, jewelry making, fabrics, floral, party and wedding supplies, holidays, and arts.  Hobby Lobby directly markets its merchandise to consumers in the State of California and throughout the United States via its in-store advertisements and its e-commerce website (www.hobbylobby.com).  Hobby Lobby sells a variety of merchandise from its own brand and/or trademark, as well as from various manufacturers.  This case involves only the

Hobby Lobby branded and/or trademarked products sold by Hobby Lobby at its retail stores.

23.    The Hobby Lobby branded and/or trademarked products sold in the Hobby Lobby retail stores are exclusively sold at Hobby Lobby and they are not sold anywhere else.  Thus, there is no other market for the Hobby Lobby branded and/or trademarked products sold at Hobby Lobby other than at Defendant's Hobby Lobby retail stores.

24.    Hobby Lobby engages in a scheme to defraud its customers by perpetually discounting its merchandise in its retail stores.  Hobby Lobby consistently advertises its merchandise with a regular "Marked" price and a corresponding "__% OFF" sale price. The "Marked" price conveys to the customer the purported regular price of the item.  The "__% OFF" sale price conveys to the customer a deeply discounted price at which the item is presently being offered for sale.  The two prices (the "Marked" price and the "__% OFF" price) are conveyed to consumers on the price tags and the corresponding price placards, respectively.  The price tags are white stickers with black lettering and approximately 2" x 1 ½" in size. *See e.g.* Exhibit A.  The price placards are primarily white with black and red print and approximately 8" x 11" in size. *See e.g.* Exhibit B.

25.    Additionally, Hobby Lobby continuously advertises its fictitious discounts using in-store flyers.  Upon entering the store, consumers are confronted with a 5'-tall metal stand that displays a large white informational advertisement depicting images of various items and listing the purported "__% OFF" discounts for each corresponding item offered in the store.  Immediately underneath the large informational advertisement is a small receptacle maintaining a stack of 8" x 11" paper flyers depicting the same advertisement and the "__% OFF" discounts described above.  The in-store flyers depict the "__% OFF" discounts Hobby Lobby offers at any given week.  An example of the in-store flyer is attached hereto as Exhibit D.

26.    However, at no time is the Hobby Lobby merchandise ever offered for sale anywhere at the "Marked" price.  The "Marked" price is merely a false reference price, which Hobby Lobby utilizes to deceptively manufacture a deeply discounted sale price

referred to as the "__% OFF" price on the merchandise sold at the Hobby Lobby retail stores during the class period.

27.    This practice is not accidental.  Rather, this practice is a fraudulent scheme intended to deceive consumers into: 1) making purchases they otherwise would not have made; and/or 2) paying substantially more for merchandise consumers believed was heavily discounted and thus, worth more than its actual value.

28.    Retailers, including Hobby Lobby, understand that consumers are susceptible to a good bargain, and therefore, Hobby Lobby has a substantial interest in lying in order to generate sales.  A product's "regular" or "original" price matters to consumers because it serves as a baseline upon which consumers perceive a product's value.  In this case, Hobby Lobby has marked its merchandise with a "Marked" price, which it intends to be the equivalent of a "regular' or "original" price.  The regular and/or original price conveys to consumers, including Ms. Chase, "the product's worth and the prestige that ownership of the product conveys." *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013) (citing Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."); *id.* at 56 ("[E]mpirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases.").

29.    Hobby Lobby's pricing advertisements uniformly include both the false regular or original price (the "Marked" price) with a corresponding discount price ("__% OFF" price) displayed on pricing placards adjacent to the products.  This uniform scheme intends to and does provide misinformation to the customer.  This misinformation communicates to consumers, including Ms. Chase, that the Hobby Lobby products have a greater value than the advertised "__% OFF" sale price.

30.    As the Ninth Circuit recognizes, "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *See Hinojos,* 718 F.3d at 1106.

**Plaintiff's Investigation**

31.    Plaintiff's investigation of Hobby Lobby revealed that Hobby Lobby's branded and/or trademarked merchandise is priced uniformly.  That is, Hobby Lobby merchandise sold at Hobby Lobby bears a price tag with a false "Marked" price and the corresponding price placard bears a  substantially discounted "__% OFF" sale price. Plaintiff's investigation confirmed that Hobby Lobby's photo frames and paintbrushes were priced with false "Marked" prices and corresponding "__% OFF" price in the 90-day period immediately preceding Plaintiff's purchase of her picture frame and paintbrush.

32.    Plaintiff's investigation cataloged the pricing practices at three Hobby Lobby retail stores in San Diego County, including: 40 North Avenue, Chula Vista, California 91910 ("Chula Vista"), 8810 Grossmont Boulevard, La Mesa, California 91942 ("La Mesa"), and 553 Grand Avenue, San Marcos, California 92078 ("San Marcos").  The false "Marked" price and corresponding purported "__% OFF" pricing scheme was both uniform and identical at all stores investigated.  For example, Plaintiff's investigation revealed the following items were continuously discounted at the stores indicated in the time periods indicated:

| Item | "Marked" Price | "__% OFF" Price | Continuously discounted from (at least) | Discounted Through | Stores Observed | Photo Exhibit |
|---|---|---|---|---|---|---|
| All Hobby Lobby Branded and/or Trademarked Photo Frames | | 50% Off | January 13, 2017 | Present | Chula Vista La Mesa San Marcos | |

| Frames: Green Tree Gallery Black Wooden 5" x 7" Shadow Box Display Case | $17.99 | 50% Off | November 30, 2016 | At least March 1, 2017 | Chula Vista La Mesa San Marcos | A |
|---|---|---|---|---|---|---|
| Frames: Green Tree Gallery Black 5" x 7" Photo Frame | $14.99 | 50% Off | January 13, 2017 | Present | Chula Vista La Mesa San Marcos | E |
| Art Supplies: Master's Touch Fine Art Studio Oil, Acrylic & Watercolor, Golden Taklon Chisel Blender, Series 7050 Size 4 | $4.69 | 50% Off | November 30, 2016 | At least March 1, 2017 | Chula Vista La Mesa San Marcos | C |
| Home Décor: White Wooden Lettered Cut-Out | $39.99 | 50% Off | January 24, 2017 | Present | Chula Vista La Mesa San Marcos | F |
| All Hobby Lobby Branded and/or | | 30% Off | January 13, 2017 | Present | Chula Vista La Mesa | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Trademarked Furniture | | | | | San Marcos | |
| <u>Furniture</u>: Small White Barstool with Wooden Legs | $49.99 | 30% Off | February 2, 2017 | Present | Chula Vista La Mesa San Marcos | G |
| <u>Furniture</u>: Large White Barstool with Wooden Legs | $119.99 | 30% Off | January 13, 2017 | Present | Chula Vista La Mesa San Marcos | H |
| <u>Furniture</u>: Multi-Colored Liberty Drawers Chest | $427.99 | 30% Off | At least September 29, 2016 | Present | La Mesa | I |
| <u>Floral</u>: Floral Stems Assorted Variety | $9.99 | 50% Off | September 28, 2016 | At least March 1, 2017 | Chula Vista La Mesa San Marcos | J |
| <u>Fabric</u>: Home Décor Fabrics | $16.99/yard | 30% Off | January 13, 2017 | Present | Chula Vista La Mesa San Marcos | K |
| <u>Furniture</u>: Gold Sequined Dress Mannequin | $99.99 | 30% Off | At least September 29, 2016 | Present | Chula Vista La Mesa San Marcos | L |

33.    The fraudulent pricing scheme applies to all Hobby Lobby branded and/or trademarked merchandise offered on sale at every Hobby Lobby retail store, including the picture frame and paintbrush purchased by Ms. Chase on March 1, 2017.  By way of example, all items in the above referenced chart were offered at a "__% OFF" price substantially less than their "Marked" price for every day Plaintiff's investigation was conducted and for well over 90 days at a time.

34.    In fact, as the date of this filing, all Hobby Lobby branded and/or trademarked merchandise offered for sale at the Hobby Lobby retail stores that Plaintiff's counsel investigated, including the picture frame and paintbrush Ms. Chase purchased, remained on sale at the "__% OFF" discounted prices.

**Plaintiff and the Class Are Injured by Hobby Lobby's Deceptive Pricing Scheme**

35.    The "Marked" price listed and advertised on Hobby Lobby's products are fake reference prices, utilized only to perpetuate Hobby Lobby's fake-discount scheme.

36.    Hobby Lobby knows that its comparative price advertising is false, deceptive, misleading, and unlawful under California, federal, and other state laws.

37.    Hobby Lobby fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the Class the truth about its advertised discount prices and former reference prices.

38.    At all relevant times, Hobby Lobby has been under a duty to Plaintiff and the Class to disclose the truth about its false discounts.

39.    Plaintiff relied upon Hobby Lobby's artificially inflated "Marked" price and false discounts when purchasing the picture frame and paintbrush from Hobby Lobby. Plaintiff would not have made such purchase but for Hobby Lobby's representations regarding the false "Marked" price and the fictitious sales price of the merchandise. Plaintiff may in the future shop at Hobby Lobby's retail stores.

40.    Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Hobby Lobby advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually

was.  Plaintiff, like other Class members, was lured in, relied on, and was damaged by the deceptive pricing scheme that Hobby Lobby carried out.

41.    Hobby Lobby intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiff and the Class to purchase merchandise in its Hobby Lobby retail stores.

## V.    CLASS ALLEGATIONS

42.    Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Hobby Lobby for violations of California state laws:

> All persons who, within the State of California, from May 1, 2013 through the present (the "Class Period"), purchased from Hobby Lobby one or more Hobby Lobby branded and/or trademarked products at discounts from the advertised "Marked" price and who have not received a refund or credit for their purchase(s).

Excluded from the Class are Hobby Lobby, as well as its officers, employees, agents, or affiliates, and any judge who presides over this action, as well as all past and present employees, officers, and directors of Hobby Lobby.  Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

43.    ***Numerosity***: The class members are so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been damaged by Hobby Lobby's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

44.    ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

    a.      Whether, during the Class Period, Hobby Lobby used false "Marked" price labels and falsely advertised price discounts on its branded and/or trademarked products sold in its Hobby Lobby retail stores;

    b.      Whether, during the Class Period, the "Marked" prices advertised by Hobby Lobby were the prevailing market prices for the respective Hobby Lobby branded and/or trademarked merchandise during the three months preceding the dissemination and/or publication of the advertised former prices;

    c.      Whether Hobby Lobby's alleged conduct constitutes violations of the laws asserted;

    d.      Whether Hobby Lobby engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

    e.      Whether Hobby Lobby engaged in false or misleading advertising;

    f.      Whether Plaintiff and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

    g.      Whether an injunction is necessary to prevent Hobby Lobby from continuing to use false, misleading, or illegal price comparison.

45. *Typicality*: Plaintiff's claims are typical of the claims of the Class members because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Hobby Lobby's false and deceptive price advertising scheme, as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

46. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

47. *Superiority*: The nature of this action and the nature of the laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and

appropriate procedure to afford relief to her and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Hobby Lobby. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Hobby Lobby will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

48.     All Class members, including Plaintiff, were exposed to one or more of Hobby Lobby's misrepresentations or omissions of material fact claiming that former "Marked" prices were in fact *bona fide*. Due to the scope and extent of Hobby Lobby's consistent false "discount" price advertising scheme, disseminated in a years-long campaign to California consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Hobby Lobby's false advertising scheme when she purchased her picture frame and paintbrush at the Hobby Lobby retail store.

49.     Hobby Lobby keeps extensive computerized records of its customers through, *inter alia*, customer loyalty programs and general marketing programs. Hobby Lobby as one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

///

///

///

///

# VI.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Violation of California's Unfair Competition Law ("UCL")
### California Business & Professions Code Section 17200, *et seq.*

50.    Plaintiff repeats and re-alleges the allegations contained in ever preceding paragraph as if fully set forth herein.

51.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

52.    The UCL imposes strict liability.  Plaintiff need not prove that Hobby Lobby intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

### *"Unfair" Prong*

53.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

54.    Hobby Lobby's actions constitute "unfair" business practices because, as alleged above, Hobby Lobby engaged in misleading and deceptive price comparison advertising that represented false "Marked" prices and corresponding deeply discounted "__% OFF" prices.  The "__% OFF" prices were nothing more than fabricated "regular" prices leading to phantom markdowns.  Hobby Lobby's acts and practices offended an established public policy of transparency in pricing, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55.    The harm to Plaintiff and Class members outweighs the utility of Hobby Lobby's practices.  There were reasonably available alternatives to further Hobby Lobby's legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

56.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

57.    Hobby Lobby's acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiff and are highly likely to deceive members of the consuming public.  Plaintiff relied on Hobby Lobby's fraudulent and deceptive representations regarding its "Marked" prices for products which Hobby Lobby sells exclusively at its Hobby Lobby retail stores.  These misrepresentations played a substantial role in Plaintiff's decision to purchase those products at steep discounts, and Plaintiff would not have purchased those products without Hobby Lobby's misrepresentations.

58.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

***"Unlawful" Prong***

59.    Hobby Lobby's acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law in connection with their deceptive pricing scheme.  The Federal Trade Commissions Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements.  15 U.S.C. § 52(a).  Under the Federal Trade Commission, false former pricing schemes, similar to the ones implemented by Hobby Lobby, are described as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious—***for example, where an artificial, inflated price was established for the purpose of enabling a subsequent offer of a large reduction—the "bargain" being advertised is a false one***; the purchaser

is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

60.    In addition to federal law, California law also expressly prohibits false former pricing schemes.  California's False Advertising Law, Bus. & Prof. Code § 17501, ("FAL"), entitled *"Worth or value; statements as to former price,"* states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market priced, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501(emphasis added).

61.    As detailed in Plaintiff's Third Cause of Action below, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA"), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

62.    The violation of any law constitutes an "unlawful" business practice under the UCL.

63.     As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

64.     Hobby Lobby's practices, as set forth above, have misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Hobby Lobby's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

65.     Hobby Lobby's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "Marked" prices and substantially discounted "__% OFF" prices.  These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiff and the Class.

66.     Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief order Hobby Lobby to cease this unfair competition, as well as disgorgement and restitution to Plaintiff and the Class of all Hobby Lobby's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION
### Violation of California's False Advertising Law ("FAL")
### California Business and Professions Code Section 17500, *et seq.*

67.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

68.     Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is ***untrue or misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

(Emphasis added).

69.     The "intent" required by Section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

70.     Similarly, this section provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

71.     Hobby Lobby's routine of advertising discounted prices from false "Marked" prices, which were never the prevailing market prices of those products and were materially greater than the true prevailing prices, was an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the Hobby Lobby products were worth more than they actually were.

72.     Hobby Lobby misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

73.     As a direct and proximate result of Hobby Lobby's misleading and false advertisements, Plaintiff and the Class have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Hobby Lobby to restore this money to Plaintiff and all Class members, and to enjoin Hobby Lobby from continuing these unfair practices in violation of the UCL in the future. Otherwise, Plaintiff, Class members, and the broader public will be irreparably harmed and/or denied an effective and complete remedy.

///

///

///

**THIRD CAUSE OF ACTION**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code Section 1750, *et seq*.**

74.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

75.    This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, *et seq.* Plaintiff and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Hobby Lobby's sale of their merchandise to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

76.    Hobby Lobby violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Hobby Lobby products:

        a.    Advertising goods or services with intent not to sell them as advertised; (a)(9);

        b.    Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; (a)(13).

77.    Pursuant to Section 1782(a) of the CLRA, on May 1, 2017, Plaintiff's counsel notified Hobby Lobby in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Hobby Lobby's intent to act.

78.    If Hobby Lobby fails to respond to Plaintiff's letter, fails to agree to rectify the problems associated with the actions detailed above, or fails to give notice to all affected consumers within 30 days of the date of written notice, as proscribed by Section 1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Hobby Lobby. As to this cause of action at this time, Plaintiff seeks only injunctive relief.

## VII.    PRAYER FOR RELIEF

79.    Wherefore, Plaintiff, on behalf of herself and all other members of the Class, requests that this Court award relief against Hobby Lobby as follows:

a.    An order certifying the Class and designating Christina Chase as the Class Representative and her counsel as Class Counsel;

b.    Awarding Plaintiff and the proposed Class members damages;

c.    Awarding restitution and disgorgement of all profits and unjust enrichment that Hobby Lobby retained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

d.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Hobby Lobby from continuing the unlawful practices as set forth herein, and directing Hobby Lobby to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

e.    Order Hobby Lobby to engage in a corrective advertising campaign;

f.    Awarding attorneys' fees and costs; and

g.    For such other and further relief as the Court may deem necessary or appropriate.

## VIII.    DEMAND FOR JURY TRIAL

80.    Plaintiff hereby demands a jury trial for all the claims so triable.

Dated: May 1, 2017

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

*/s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 756-6994
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

# <u>TABLE OF CONTENTS</u>

Exhibit A……………………………………………………………………1-3

Exhibit B…………………………………………………………………….4-5

Exhibit C…………………………………………………………………….6-8

Exhibit D…………………………………………………………………….9-10

Exhibit E……………………………………………………………………11-13

Exhibit F…………………………………………………………………......14-17

Exhibit G……………………………………………………………………18-19

Exhibit H……………………………………………………………………20-22

Exhibit I……………………………………………………………………...23-25

Exhibit J…………………………………………………………………….26-28

Exhibit K……………………………………………………………………29-31

Exhibit L……………………………………………………………………32-34

# EXHIBIT A





# EXHIBIT B



# EXHIBIT C





# EXHIBIT D



# To Mom, with love

## Mother's Day - Sunday, May 14

# HOME DECOR 50% OFF

## Categories Listed
Does not include Seasonal Department

**Knobs, Drawer Pulls & Handles**

**Ceramic Decor**
Tabletop decor, plates, serving dishes, pitchers, cups and salt & pepper

**Glass Decor**
Glass Department, floral glass vases & craft glass containers
Does not include craft stained glass or glass tabletops

**Polyresin & Pottery Decor**
Finials, candle holders, boxes, bowls, floral planters & vases

**Candle Holders**
Wall & table

**Decorative Crosses**
Wall & table

**Mirrors**
Wall & table

**Clocks**
Wall & table

**Pillows, Rugs & Throws**

**Framed, Canvas & Adhesive Vinyl Wall Art**

**Decorative Bottles**
Fruit & Vegetable Filled

**Metal Decor**
Metal wall decor, functional & decorative metal accessories (Includes metal containers in our Floral & Craft Departments)
Does not include furniture

**Candles, LED Candles, Fragrance Warmers & Diffusers**
Priced $4.99 & Up
Does not include Candle FX*, tealights, votives, value packs or fragrance wax & oils

**Wood Decor**
Wood wall decor & finished decorative wood accessories
Does not include furniture or unfinished craft wood

*Summer and items labeled The Spring Shop™ are not included in Home Decor sale.*



## Items labeled
## THE SPRING SHOP™
# 40% OFF

*Statuary, Garden Planters, Gazing Balls, Garden Wall Decor and More*



# SUMMER TOYS
# 40% OFF

Includes Little Wishes"





# FLORAL 50% OFF
## Categories Listed
Does not include Seasonal Department or items labeled "floral accents"

**Ribbon & Trims by the Roll**
Ribbon, trims, tulle & deco mesh in our Wedding, Floral & Fabric Departments
Does not include ribbon, trim or tulle sold by the yard

**Floral Arrangements**
Flowering & greenery
Does not include custom designs or potted trees

**Garlands, Swags, Wreaths & Teardrops**
Flowering & greenery

**Wedding**
Items Labeled
Studio His & Hers"
Invitations, toasting glasses, ring pillows,
cake toppers and more

# FURNITURE
ALWAYS
# 30% OFF
THE MARKED PRICE*



# YARN & NEEDLE ART

**Artiste* Cotton Crochet Thread** — 1.99
140 - 425 yds.

**I Love This Yarn!** — 3.66
Acrylic yarn, solids, stripes, ombres and metallics
5 & 7 oz.
Does not include overdyed

**Poly-Fil* 100% Polyester Fiberfill** — 3.99
with Stuffing Tool  12 oz

**Needle Art Kits** — 30% OFF
Priced $5.99 & up
Counted, baby, children's, latch hook and stamped





# FRAMES 50% OFF
## Categories Listed

**Photo Frames**
Always 50% off the marked price*
Our entire selection of basic & fashion tabletop frames and wooden photo storage

**Collage Frames**

**Custom Frames**
Always 50% off the marked price*
Applies to frame only

**Wall Frames**
Poster, document and portrait frames with glass



# CRAFTS 30% OFF
## Categories Listed

**Unfinished Craft Wood**
Priced $5.99 & Up

**T-Shirts**
Always 30% off the marked price*
Youth & adult t-shirts, sweatshirts, infant & toddler t-shirts, creepers and dresses

**Crayola* Products**

**Pre-Cut Stained Glass**
Single sheets only

**Crafts by Playside Creations*

**Krylon* Spray Paint**



# PAPER CRAFTS BLOWOUT SALE
# 50% OFF

the Paper Studio* and Stampabilities*

Over 4,000 products

Paper, stickers, albums, stamps & accessories, embellishments, totes & organizers, tools and more



# ART SUPPLIES

**Master's Touch* Single Art Brushes** — 50% OFF

**Art Pads & Sketchbooks** — 40% OFF

**2-Pack Canvas**
6 Sizes available
8x10   11x14   16x20
3.99   5.99   7.99

**Master's Touch* Artist Acrylic Tube Paints** — 3.57
4.1 oz
$3.99 Regular price

**Sargent Art* Tempera Paints** — 1.27
16 oz
$1.99 Regular price





# JEWELRY MAKING 50% OFF
## Categories Listed

**D.I.Y. Jewelry Kits and Bead Boxes**

**Bead Design Co.™, In Bloom™ and Treehouse Studio***
Bulk beads & gems in a variety of materials

**Fairy Tale™** by Bead Treasures*
Pendants, charms and beads for a grown-up happily ever after

**Blank Slate**
Create a personalized look with stamping blanks, bezels and more

**the Jewelry Shoppe™**
Findings, hair accessories, nickel free, sterling-dipped and sterling silver

**Charms** by A Bead Story & Charm Me*
Featuring Story Lockets™
Does not include sterling silver



# FABRIC

**Home Decor Fabric**
Prints, solids, sheers and laminated fabric

**Fleece**
Prints, solids and microfiber

**Calico Prints & Solids**
Apparel prints and batiks

ALWAYS
# 30% OFF
THE MARKED PRICE*

**Ribbon, Trim & Tulle Spools** — 50% OFF
Does not include ribbon, trim or tulle sold by the yard or Seasonal Department

**Knits** — 30% OFF
Jersey knits, ruffle knits and travel knits

**July 4th Fabric** — 30% OFF



*Discounts provided every day; marked prices reflect general U.S. market value for similar products.*

# HOBBY LOBBY

**STORE HOURS:**
9 A.M. - 8 P.M.
CLOSED SUNDAY

PRICES GOOD IN STORES MONDAY, MAY 1 – SATURDAY, MAY 6, 2017.
PRICES GOOD ONLINE SUNDAY, APRIL 30 – SATURDAY, MAY 6, 2017.
SOME ADVERTISED ITEMS NOT AVAILABLE ONLINE. SALES SUBJECT TO SUPPLY IN STOCK.
SELECTION AND QUANTITIES VARY BY STORE. AD DOES NOT APPLY TO PRE-REDUCED ITEMS.

# EXHIBIT E





# EXHIBIT F







# EXHIBIT G



# EXHIBIT H





# EXHIBIT I





# EXHIBIT J





# EXHIBIT K





# EXHIBIT L



