1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  CHRISTINA CHASE, on behalf of            Case No.: 17-cv-00881-GPC-BLM
    herself and all others similarly situated,
12                                           **ORDER DENYING DEFENDANT'S**
                                Plaintiff,   **MOTION TO DISMISS**
13                                           [DKT. NO. 22]
    v.
14
    HOBBY LOBBY STORES, INC., an
15  Oklahoma corporation, and DOES 1
    through 50, inclusive,,
16
                                Defendants.
17

18

19          Presently before the Court is a motion to dismiss Plaintiff Christina Chase's First

20  Amended Complaint filed by Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") on

21  July 18, 2017.  Dkt. No. 22.  Plaintiff filed an opposition on December 18, 2017 and

22  Defendant filed its reply on January 2, 2018.  Dkt. Nos. 26-27.   Pursuant to Civil Local

23  Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.

24  For the reasons set forth below, the Court **DENIES** Defendant's motion to dismiss.

25

26                                          1

27

28

# I.   BACKGROUND

Plaintiff, a resident of California, brings this action on behalf of herself and others similarly situated against Defendant Hobby Lobby, a resident of Oklahoma, under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).  Defendant operates Hobby Lobby retail stores and the hobbylobby.com website and advertises, markets, distributes, and sells home décor, arts, crafts, hobby supplies, and other accessories in California and throughout the United States.  First Amended Complaint ("FAC") ¶ 20.

In her First Amended Complaint (Dkt. No. 16, "FAC"), Plaintiff alleges that Hobby Lobby is engaging in the unlawful business practice of advertising fictitious prices and phantom discounts by referencing a fake "Marked" price, that is then offered for sale at a deeper "discounted" price.  FAC ¶ 1.  Plaintiff alleges that the "Marked" price on Hobby Lobby's merchandise is a "total fiction" because the merchandise is never offered for sale, nor actually sold at the represented "Marked" price.  *Id.* ¶¶ 4-5.

On or around March 1, 2017, Plaintiff purchased a 5"x 7" Green Tree Gallery Shadow Box Display Case Photo Frame ("Photo Frame") for approximately $8.99 at a Hobby Lobby retail store at 8810 Grossmont Boulevard, La Mesa, California 91942.  *Id.* ¶ 13.  Chase purchased the Photo Frame after walking down an aisle lined with photo frames. *Id.* ¶ 14.  The back of the Photo Frame had a white price tag sticker in black print that listed the "Marked" price as $17.99.  *Id.*; FAC Ex. A.  Amongst the other photo frames was a prominently displayed white placard approximately 8"x11" in size that stated "Photo Frames 50% OFF the Marked price."  FAC ¶ 14; FAC Ex. B.  Plaintiff alleges that the "first (and only thing)" she noticed was the large, boldfaced "50% OFF" language.  *Id.* ¶ 14.  She did not notice or read any disclaimer.  *Id.* ¶15.  After examining the "Marked" price of $17.99, Plaintiff asserts that she believed—based on the placard's representations that the Photo Frames were 50% off—that the Photo Frame had been previously sold for

17-cv-00881-GPC-BLM

$17.99 at Hobby Lobby and that she was purchasing a Photo Frame with significant value above the $8.99 purchase price. FAC ¶ 16. Plaintiff contends that this product was never offered for sale at the $17.99 price, and that this product was never offered for sale or sold at that price within the 90-day period preceding her purchase. *Id.* ¶¶ 17, 35.

Plaintiff also purchased a Master's Touch Fine Art Studio Oil, Acrylic & Watercolor Golden Taklon Chisel Blender Series 7050 Size 4 (the "Paintbrush") for approximately $2.34 that day. *Id.* ¶¶ 18-19. The Paintbrush had a white price tag with black print, approximately 2"x1 1/2" in size listing "$4.69." FAC ¶ 18; FAC Ex. C In the art supply aisle, displayed prominently on a shelf, was a white placard with red and black print, approximately 8" x 11" in size that stated "Art Supplies 50% OFF the Marked price" in bold print. FAC ¶ 18. Ms. Chase did not notice or recall a disclaimer or other language on this advertisement. *Id.* Based on these price tags, Plaintiff believed the Paintbrush had been previously sold for $4.69 at Hobby Lobby. *Id.* ¶ 19. Plaintiff believed she was purchasing a Paintbrush that had a value significantly higher than the $2.34 purchase price. *Id.* Plaintiff asserts that this Paintbrush was never offered for sale or sold at the $4.69 price, and that the Paintbrush was not offered for sale or sold at the price within the 90-day period preceding Plaintiff's purchase. *Id.* ¶ 20.

Plaintiff's FAC alleges three causes of action: (1) Violation of California's Unfair Competition Law ("UCL") pursuant to California Business and Professions Code Section 17200, *et seq.*; (2) Violation of California's False Advertising Law pursuant to California Business and Professions Code Section 17500, *et seq.*; (3) Violation of California's Consumers Legal Remedies Act ("CLRA") pursuant to California Civil Code Section 1750, *et seq. Id.* ¶¶ 52-81.

Plaintiff's FAC seeks: (1) an order certifying the Class and designating Christina Chase as the Class Representative and her counsel as Class Counsel; (2) damages for

3

Plaintiff and proposed class members; (3) restitution and disgorgement of profits and unjust enrichment Hobby Lobby retained from Plaintiff and class members; (4) declaratory and injunctive relief including enjoining Hobby Lobby from continuing the alleged unlawful practices; (5) order directing Hobby Lobby to engage in a corrective advertising campaign; (6) attorney's fees and costs. *Id.* ¶ 82.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that,

4

even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

### III.  Request for Judicial Notice

Defendant requests that the Court take judicial notice of the type face and font size of the Advertising Template (attached as Exhibit B to the First Amended Complaint) including that:

1. The word "ALWAYS" is printed in 36-point font in "Calibri" typeface

2. The words "THE MARKED PRICE" is printed in 27-point font size in "Calibri" typeface

3. The words "*DISCOUNTS PROVIDED EVERY DAY; MARKED PRICES REFLECT GENERAL U.S. MARKET VALUE FOR SIMILAR PRODUCTS" is printed in 14-point font size, in "Calibri" typeface.

RJN, Dkt. No. 22-3. Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one not subject to reasonable dispute that is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The Court agrees with the Third Circuit that in many situations a Court could potentially take judicial notice of font, size, and spacing of the text when an electronic copy of a document is provided.  *See Jewsevskyj v. Financial Recovery Services, Inc.*, 2017 WL 2992499, at *1 n.3 (3d Cir. 2017) (taking judicial notice of the "font, size, style, and spacing of the text on a review of an electronic copy of the letter.").  Here, however, the Court has not received from either party an electronic native PDF from which the Court could accurately and readily determine the font size and typeface used in the placard.

Exhibit B to the First Amended Complaint—the advertisement placard as

5

displayed to consumers—is a full-page placard with the red border extending to the edge of the paper, and containing only an extremely small white border. In contrast, Exhibit B to the Request for Judicial Notice appears to have been reduced in size as significant white space appears on the borders. *Compare* FAC, Ex. B, Dkt. No. 16 at 30 with RJN, Ex. B, Dkt. No. 22-3. Because Exhibit B to the Request for Judicial Notice has been reduced in size, the Court cannot conclude that the *exact* font size and typefaces of the actual advertisement shown to consumers is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b).[1] Accordingly, the Court will **DENY** Defendant's Request for Judicial Notice.

## IV. DISCUSSION

Defendant moves to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 22 ("MTD").

### a. Rule 9(b)

With regard to claims sounding in fraud, Plaintiff must satisfy a "heightened" pleading standard that must "state with particularity the circumstances surrounding fraud." Fed. R. Civ. P. 9(b). This means the Plaintiff must set forth the "who, what, where, and how" of the fraud alleged. *Vess v. Ciba-Geigy Corp.* USA, 317 F.3d 1097, 1106 (9th Cir. 2003). The heightened pleading standard applies to claims under the CLRA, UCL, and FAL. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *Rael II*, 2016 WL 7655247, at *5 (S.D. Cal. Dec. 28, 2016). "It is not enough . . . to simply claim that [an advertisement] is false—[the plaintiff] must allege facts showing ***why*** it is

---

[1] As stated in its prior order, the Court will take judicial notice of Exhibit B to the Request for Judicial Notice as incorporated by reference because it is a clearer picture of an exhibit attached to the complaint that forms the basis of Plaintiff's claims. *See* Dkt. No. 15 at 6.

false." *Davidson v. Kimberly–Clark Corp.*, 76 F. Supp. 3d 964, 974 (N.D. Cal. 2014) (emphasis in original).

### i. The Reasonable Consumer Test

To allege a claim under the UCL,[2] FAL,[3] and CLRA,[4] plaintiffs must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'"). A reasonable consumer is the "ordinary consumer acting reasonably under the circumstances." *Davis v. HSBC Bank Nevada*, 691 F.3d 1152, 1162 (9th Cir. 2012). A plaintiff must allege that the advertisement at issue has the "capacity, likelihood, or tendency to deceive or confuse the public." *Id.* "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few

---

[2] California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under the unlawful, unfair, and fraudulent prongs. *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012). Unfair competition under the UCL "expressly incorporates [California's] FAL prohibition on unfair advertising as one form of unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013).

[3] California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. The FAL prohibition on unfair advertising states:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal Bus & Prof. Code § 17501.

[4] California's CLRA outlaws "unfair methods of competition and unfair or deceptive practices acts or practices undertaken by any person in a traction intended to result . . . in the sale . . . of goods . . . to any consumer." Cal Civ. Code § 1770. The CLRA prohibits "[a]dvertising goods or services with intent not to sell them as advertised" and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal Civ. Code § 1770(a)(9), (13).

consumers viewing it in an unreasonable manner." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012). Instead, the phrase likely to deceive "indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

In determining whether a statement is misleading, the primary evidence in a false advertising case is the advertising itself. *Azimpour*, 2017 WL 1496255, at *7 (citing *Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062, 1092 n.20 (N.D. Cal 2013)). Courts have recognized that "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on [a motion to dismiss]." *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (internal quotations removed).

## V. Discussion

This Court, in its prior ruling, held that:

> Plaintiff fails to meet Rule 9(b)'s pleading standards requiring particularity. While her complaint provides sufficient detail as to the "who, what, when and where" of the alleged misconduct, Plaintiff has not adequately alleged the "how" of Defendant's alleged misconduct.

Dkt. No. 22 at 17. The Court finds that Plaintiff has adequately redressed the deficiencies in her prior complaint by setting forth with specificity her theory as to "how" Defendant's advertising scheme was deceptive. Specifically, Plaintiff now alleges that she (1) only noticed the large boldfaced 50% OFF language; (2) did not notice the word "always" because it was in substantially smaller font; (3) did not notice and did not read any disclaimer or other language on the placard. FAC ¶ 14-15; *See Rubenstein v. Neiman Marcus Group, LLC*, 687 Fed. App'x 564, 567 (9th Cir. 2017) (plaintiff adequately alleged

8

with specificity that consumers were misled into believing that "Compared To" price tags at Neiman Marcus were actually charged by Neiman Marcus or other merchants in the vicinity).

Accordingly, the remaining question is whether—under these facts—a "reasonable consumer" would have been misled to believe that the discounted price represented a "reduction from Hobby Lobby's own former price for an article." *See* FAC ¶ 61 Taking Plaintiff's alleged facts as true and drawing all reasonable inferences in favor of the plaintiff, the Court concludes that it is plausible that a "reasonable consumer" could have been misled by plaintiff's advertising.

Citing *Freeman v. Time, Inc*., 68 F.3d 285 (9th Cir. 1995), Defendant argues that a reasonable consumer would have seen the word ALWAYS and understood that Hobby Lobby had not previously sold the item for the marked price. Mot. at 9. Similarly, Defendant argues that a reasonable consumer would have read and understood the disclaimer to mean that Hobby Lobby had not previously sold the items at the marked price. In *Time, Inc.* the Ninth Circuit affirmed the dismissal of an action alleging that sweepstakes promotional materials were fraudulent and misleading. *Id.* at 290. The Court rejected Freeman's argument that readers would ignore qualifying language in small print, and instead pointed out that "[t]he promotions expressly and repeatedly state the conditions which must be met in order to win. None of the qualifying language is hidden or unreadably small." *Id.* at 289.

*Time, Inc.* is distinguishable.[5] First, qualifying language was not repeatedly asserted

_____

[5] The Ninth Circuit has observed that *Time, Inc.* is one of only a few cases in this context where a district court's grant of a motion to dismiss was upheld. *Gerber*, 552 F.3d at 598.

in the placards at issue in this case.  *See id.* at 289. Second, there is a significant difference between viewing a print mailed advertisement and viewing a placard in a store aisle amidst a sea of photo frames.  A reasonable consumer viewing a printed piece of paper up close might be expected to read and discern more closely any disclaimers on a page than someone shopping in a store aisle viewing a placard from a distance.[6]

The Court concludes that it is plausible that a reasonable consumer—viewing the ad from a distance—could have failed to take note of the word "ALWAYS" and ignored disclaimers in light of the size and bolded font of the "50 % off" language in the overall context of the advertisement.[7]  *See Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012) (courts should take into account the "context of the entire advertisement.").  Accordingly, it is plausible that a reasonable consumer could have understood that the Photo Frame and other products had previously been sold at Hobby Lobby at a reduced price.  *See Williams v. Gerber Prods.*, 552 F.3d 934, 939 (9th Cir. 2008) (reasonable consumers should not be expected to look beyond misleading representations on front of box to discover truth of ingredient list in small print on side of box); *Sterling v. Stein-Mart*, No. 15-01411-BRO-KKx, Dkt. No. 41, at 8-9 (denying motion to dismiss where Plaintiff "[allege[d] that she did not notice the [asterisk on an allegedly deceptive price tag] and that she did not read Defendant's Pricing Policy prior to buying items from Defendant's store."); *id.* at 9 ("The Court cannot and does not find, particularly at this stage

---

[6] The Court finds Defendant's citations to product packaging cases, *see* Reply at 1, inapposite for a similar reason.  There is a significant difference between viewing a beer bottle in your hand at a close distance, and viewing a pricing placard in the context of an aisle of photo frames.
[7] Defendant notes that Plaintiff did not see the word "ALWAYS" but noticed the similarly-sized words "THE MARKED PRICE."  Taking the alleged facts as true, the Court concludes that a reasonable consumer could have seen "50% OFF" and "THE MARKED PRICE," both of which appear in the center of the placard, while failing to notice the "ALWAYS" above the "50% OFF."

of the proceedings, that Defendant's disclosure is so unambiguous and express such that a reasonable consumer is likely to be deceived as a matter of law."). *See also Branca v. Nordstrom*, 2015 WL 10436858, at *7 (S.D. Cal. Oct. 9, 2015) (finding that plaintiff sufficiently alleged facts to show a likelihood that reasonable consumers would be deceived by Nordstrom's tags based on survey evidence, but noting that "mere anecdotal evidence [would] suffice."); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) (plaintiff sufficiently alleged a misleading price scheme where plaintiff "interpreted the '40% off' language as advertising a discount from Art.com's former prices.").

Further, given the factual inquiry required to adequately assess the merits of the reasonable consumer standard, the court cannot find at the motion to dismiss stage that Hobby Lobby's advertising scheme would not mislead a reasonable consumer. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (stating that the reasonable consumer standard raises questions of fact that are appropriate for resolution on a motion to dismiss only in "rare situations."); *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on a motion to dismiss."); *Gerber Prods. Co.*, 552 F.3d at 938 ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on a [motion to dismiss.]"). This determination can be aided by the benefit of extrinsic evidence, including that of expert witnesses. The Court concludes it would be inappropriate to resolve at this stage whether a reasonable consumer

11

would be deceived under the circumstances alleged.[8]

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED**.

Dated: February 8, 2018

Hon. Gonzalo P. Curiel
United States District Judge

_____

[8] Defendant argues that Plaintiff cannot adequately represent consumers who *did* see the disclaimer language. This argument is premature and may be made at the class certification stage. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615-616 (N.D. Cal. 2007) ("Dismissing class allegations at the pleading stage, however, is rare because the parties have not yet engaged in discovery and the shape of a class action is often driven by the facts of a particular case.").